IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-08-242 |
| § | CIVIL ACTION NO. H-09-1518 |
| CARLOS MARIN-ARREOLA § | |
| § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Carlos Marin-Arreola's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.44),[1] the United States' Answer (Document No. 54), and Movant's Motion to Supplement § 2255 Motion (Document No. 56). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that an evidentiary hearing be held on the issue of whether Movant was denied effective assistance of counsel due to his counsel's alleged failure to file a direct appeal. It is FURTHER RECOMMENDED that Movant be appointed counsel to represent him at the hearing. It is ORDERED that Movant's Motion to Supplement § 2255 (Document No. 56) is GRANTED.

---

[1] Carlos Marin-Arreola's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-09-1518 and at Document No. 44 in Criminal Action No. H-08-242. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.      **Procedural History**

Movant Carlos Marin-Arreola who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is Marin-Arreola's first attempt at § 2255 relief.

On April 23, 2008, Marin-Arreola was charged by Indictment with illegal re-entry of a previously deported alien following a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2). (Document No. 1). On June 20, 2008, Marin-Arreola pleaded guilty. (Document No. 18, Transcript of Rearraignment, Document No. 50). No written Plea Agreement was entered.

At Marin-Arreola's June 20, 2008, Rearraignment hearing,[2] the Court engaged in an extended colloquy to ensure that Marin-Arreola understood the charges against him, including the elements of the offense, the maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated. (Document No. 18, Transcript of Rearraignment Hearing, Document No. 50). In particular, with respect to Marin-Arreola's understanding of the elements of the offense, the rights he was waiving, and the calculation of his sentence, the following exchanges took place between Marin-Arreola and the Court regarding Marin-Arreola's understanding of his plea:

> The Court: Have each of you received a copy of the indictment pending against you, that is, the written charges that were brought against you in this case?
>
> \*                                                                   \*
>
> Defendant Carlos Marin-Arreola: Yes, your Honor.

---

[2] Defendant Luis Gerardo Torres-Hernandez changed his plea at the same proceeding. All references herein are to Marin-Arreola.

The Court: All right. And have each of you gone over those written charges and the case in general with your attorney?

       *               *

Defendant Carlos Marin-Arreola: Yes, Your Honor.

The Court: Do you feel that you understand what it is you've been accused of?

Defendant Carlos Marin-Arreola: Yes, Your Honor.

       *               *

The Court: Mr. Marin, are you fully satisfied with the counsel and advice given to you in this case by your attorney, Mr. Herman?

Defendant Carlos Marin-Arreola: Most definitely, ma'am.

       *               *

The Court: Uh-huh. Has anybody made any promises or assurances to you in an effort to persuade you to plead guilty in this case?

Defendant Carlos Marin-Arreola: No, ma'am.

       *               *

The Court: That's all right. That's okay. Has anybody in any way attempted to force either of you to plead guilty in this case?

       *               *

Defendant Carlos Marin-Arreola: No, ma'am.

The Court: Are each of you pleading guilty because you are guilty?

       *               *

Defendant Carlos Marin-Arreola: Yes.

The Court: Do each of you understand that the offense to which you are pleading guilty is a felony offense and that, if your plea is accepted, you will be adjudged guilty of that offense; and such adjudication may deprive you of valuable civil rights, such

as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess firearms?

        \*              \*

Defendant Carlos Marin-Arreola: Yes, Your Honor.

The Court: All right. Are either of you citizens of the United States?

        \*              \*

Defendant Carlos Marin-Arreola: No, ma'am.

The Court: Do each of you understand that a finding of guilt in this case may result in your being deported from the United States?

        \*              \*

Defendant Carlos Marin-Arreola: Yes, your Honor.

The Court: All right. I want to go over with each of you now the maximum possible penalties you're facing as a result of your plea of guilty this morning.

        \*              \*

All right. Mr. Marin, you are pleading guilty to illegal reentry into the United States, a violation of 8 United States Code Sections 1326(a) and (b))(2). The penalty for that crime is not more than 20 years imprisonment and/or a fine of not more than $250,000 and not more than three years supervised release.

Along with that supervised release, there would be certain conditions of supervised release that you would be obliged to follow. If you failed to follow those, you could be put back into prison for some additional period of time without any credit for the time you've been in prison, without any credit for the time that you had been on supervised release; and there would also be a special assessment.

Do you understand that all of those taken together, the prison time, the fine, supervised release, conditions of supervised release, and the special assessment, those are the maximum possible penalties you're facing as a result of your plea of guilty this morning?

Defendant Carlos Marin-Arreola: Yes, Your Honor.

4

The Court:  All right.  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case.  Have each of you discussed with your attorneys how those guidelines may apply in your case?

      *                *

Mr. Marin, have you discussed the guidelines with your attorney, Mr. Herman?

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

The Court:  All right.  Do each of you understand that today I will not be able to tell you what your sentence is?

      *                *

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

The Court:  And the reason for that is that, although the sentencing guidelines are no longer mandatory but are advisory, I am still obligated to consider the guidelines when I formulate a sentence for each of you.

      *                *

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

The Court:  And in order for me to consider the guidelines, I must call upon the probation office to have a probation officer investigate each of your cases and to write a presentence report that will assist me in sentencing.

Do you understand that [Mr. Marin]?

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

The Court:  All right.  And after the presentence report has been completed, each of you will get a copy of that report.  The Government will also get a copy of that report.  And you will – and the Government will be given an opportunity to make objections to the presentence report.

Do you understand that, [Mr. Marin]?

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

5

The Court: All right. And after we've had the –when the objections have been made, we will have a sentencing hearing. At that hearing, I will rule on any objections that may be made to the presentence report. I will also rule on any motions that may be made, recommendations that may be made, or any other matters that may be brought to my attention that might have an impact on the sentence that you receive.

Do you understand that, [Mr. Marin]?

Defendant Carlos Marin-Arreola: Yes, Your Honor.

The Court: And then, at the conclusion of the hearing, after I've ruled on all those matters, I will be in a position to determine what your sentence is; and I will pronounce sentence. And it could be that, when I pronounce sentence, the sentence I give you is more severe than the one that you and your attorney had estimated you might get when you were talking about how the guidelines might apply in your case.

Do you understand that, [Mr. Marin]?

Defendant Carlos Marin-Arreola: Yes, Your Honor.

The Court: And do you understand that if I give you a sentence that is more severe than the one you're expecting, do you understand you will not be given a chance to withdraw your plea of guilty?

Do you understand that, [Mr. Marin]?

    *              *

Defendant Carlos Marin-Arreola: Yes, ma'am.

    *              *

The Court: All right. Do each of you understand that under some circumstances, you or the Government would have the right to appeal any sentence that I impose?

Do you understand that, [Mr. Marin]?

    *              *

Defendant Carlos Marin-Arreola: Yes, Your Honor.

    *              *

[Court invites the Government to summarize essential elements it is prepared to prove at trial.]

Mr. Jenkins: Yes, Your Honor. Your Honor, may it please the Court, if this case were tried in the matter of Carlos Marin-Arreola, the United States would prove the following facts beyond a reasonable doubt: that, first, the Defendant is a citizen and national of the United Mexican States; that on December 15, 2000, using the name of Carlos Arreola-Marin, aka Carlos Marin-Arreola, was convicted in the United States District Court, Western District of Texas, for the offense of importing a quantity of marijuana, committed on or about April 13, 2000, in Cause Number EP:00-CR-718-H. He was sentenced to 18 months confinement.

That on August 24th of 2001, the Defendant, using the name of Carlos Marin-Arreola, was deported from the United States at El Paso, Texas, to Mexico; that on March 16th of 2008, the Defendant, using the name Carlos Marin-Arreola, was found in the United States at Houston, Texas.

A record search of the Central Index System and the Defendant's A File revealed that there was no evidence that the Defendant had obtained consent before March of 2003 from the Attorney General of the United States to reapply for admission into the United States and there is no evidence that the Defendant obtained a corresponding consent after February of 2003 from the Secretary of the Department of Homeland Security.

Finally, a fingerprint analyst examined and compared prints—compared the prints to the warrant of deportation and conviction documents to the known prints of the Defendant and concluded they were made by one and the same individual.

The Court: I neglected to go over the essential elements with you, Mr. Marin, I believe. So I need to do that now even though it might seem a little bit backwards. But I need to just make you aware of the essential elements which I told you what the Government would have to prove to a jury beyond a reasonable doubt.

First, that the Defendant–that's you, Mr. Marin, was an alien at the time alleged in the indictment; second, that you had previously been deported from the United States subsequent to being convicted of an aggravated felony; third, that thereafter you knowingly entered or were found in the United States; and fourth; that you had not obtained consent before March 2003, from the Attorney General of the United States to reapply for admission into the United States and without having obtained corresponding consent after February 2003, from the Secretary of the Department of Homeland Security, pursuant to 6 United States Code Sections 202(3) and (4) and 6 United States Code Section 557.

7

Do you understand those are the essential elements that the Government must — would have to prove to a jury beyond a reasonable doubt?

Defendant Carlos Marin-Arreola:  Yes, Your Honor.

The Court:  Okay.  Now, tell me — tell me in your own words what it is you did to commit the crime you're pleading guilty to this morning.

Defendant Carlos Marin-Arreola:  Yeah.  I'm a Mexican citizen, and I just came back to the United States without permission after I was deported.

The Court:  You were deported–you had committed an aggravated felony?  That's the allegation.

Defendant Carlos Marin-Arreola:  Yes, ma'am.

The Court:  And you were deported?

Defendant Carlos Marin-Arreola:  Yes, ma'am.

The Court:  And you didn't ask for permission to come back?

Defendant Carlos Marin-Arreola:  No, Ma'am.

The Court:  But you came back anyway?

Defendant Carlos Marin-Arreola: Unfortunately, ma'am.  (Document No. 50, pp. 8-18, 25-27).

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No.21, 34), to which Marin-Arreola filed written objections. (Document No.33).[3]   Pursuant to the

---

[3] The docket sheet shows that Marin-Arreola  filed written objections to the PSR.  In particular, he objected to the assessment of additional criminal history points for commission of the instant offense while on supervised release and within two years of his release from imprisonment on a prior case as described in PSR ¶ 31, 32.  According to Marin-Arreola, he did not return to the United States until 2006 and that the notation on an ICE Form I-213 was an error. In support of this contention, Marin-Arreloa pointed to his criminal history which showed no activity until 2006, and his work history which shows that he was employed in Mexico from 2001 to 2006.  Based on Marin-Arreola's calculation, with a Criminal History Category III, he had a sentencing range of  46 to 57 months.  (Document No.33).

PSR, Marin-Arreola's sentence was calculated as follows: (1) Marin-Arreola had a base offense level of 8. (2) Because Marin-Arreola was previously deported subsequent to being convicted of a drug trafficking offense for which the sentence imposed exceeded 13 months (importation of 50 kilograms or more of marijuana in the United States District Court for the Western District of Texas, El Paso division, No. EP-00-CR-718), under U.S.S.G. § 2L1.2(b)(1)(A)(I), his base offense level was increased by 16 levels.[4] (3) Because Marin-Arreola accepted responsibility for his conduct, and did so in a timely manner, pursuant to U.S.S.G. § 3E1.1(a) & (b), his offense level was reduced by three levels. (4) With an adjusted base offense level of 21, and with a criminal history category of VI, Marin-Arreola had a guideline sentencing range of 57 to 71 months. Marin-Arreola was sentenced on November 21, 2008. (Document No.39, Transcript of Sentencing Hearing, Document No. 52). With respect to Marin-Arreola's objections to the PSR based on his contention that he was not present in the United States until 2006, Marin-Arreola's objections were overruled as follows[5]:

---

[4] With respect to Marin-Arreola's objections, the PSR states in pertinent part:

The Probation Officer, upon further review of the documentation, agreed that the police report cited in PSR ¶ 37 is actually dated 1993 — not 2003. Therefore, all the facts in the PSR support the assertion that the defendant returned in 2006, not 2002. The 2002 notation was an error on the part of the ICE agent, not an admission by the defendant. Therefore, the three additional criminal history points should not be assessed.

If the Court grants this objection, the total criminal history points will be four, resulting in a criminal history category of III, with a resulting guideline range of 46 to 57 months.

[5] The Probation Officer responded to Marin-Arreola's objections as follows:
The information regarding the defendant's admission of reentering the United States on August 1, 2002, near Brownsville, Texas, without being inspected by an immigration officer was derived from the Record of Deportable/Inadmissible Alien (Form I-213) from the defendant's immigration file, and is considered reliable. However, there is no other substantiated evidence, such as documented arrests or

The Court: All right. The first objection has to do with the additional criminal history points assessed for commission of the instant offense while on supervised release and within two years of his release from imprisonment on a prior case. Do you want to speak to that or let your papers stand?

Mr. Gonzales: Judge, I think that the objections were filed by Mr. Herman prior to me getting the case, but, in that situation, I think it has been resolved, and they have deleted that, and they have corrected that, if I am not mistaken, on one of the addendums that was filed by the probation department.

Mr. Pechacek: The final addendum. They went along with that objection and we don't oppose it.

Mr. Gonzales: It's the second addendum to the —

The Court: Let me take a look at it. The reason that I'm looking at in the addendum reads as follows:

> The information regarding the defendant's admission of reentering the United States on August 1st, 2002, near Brownsville, Texas, without being inspected by an immigration officer, was derived from the record of Deportable Inadmissible Alien, Form 1213 – I-213 from the Defendant's immigration file and is considered reliable. However, there is no other substantiating evidence, such as documented arrests or employment history, to imply that the Defendant was actually in the

employment history, to imply that the defendant was actually in the United States after he was deported in August 2001, until he was arrested in New Orleans on March 30, 2006. The assault arrest documented in Paragraph 37 of the PSR actually occurred on May 23, 1993 (as opposed to 2003). This corrected information is adopted into the PSR via the second Addendum.

If the Court considers the defendant's present assertion that he reentered the United States sometime in 2006, the criminal history computation in the PSR is in error since the instant offense (which would be March 30, 2006) was not committed while he was on supervised release or less than two years following his release from custody on August 1, 2001, for the sentence of importation of 50 kilograms or more of marijuana in the United States Docket No. EP-00-CR-718. Therefore, the three additional points pursuant to U.S.S.G. § 4A1.1(d) and (e) would be inapplicable. The total of the criminal history points would be four, resulting in a criminal history category of III. Based on a total offense level of 21 and a criminal history category of III, the advisory guideline imprisonment range would be 46 to 57 months. The fine range would remain the same.

> United States after he was deported in August 2001, until he was arrested in New Orleans on March 30, 2006. The assault arrest documented in paragraph 37 actually occurred on May 23, 1993, as opposed to 2003. This corrected information if adopted into the PSR via the second addendum."

So, what they agreed with is the 1993 date, not the 2003 date, but they're not agreeing that this ICE document is not a reliable document.

Mr. Pechacek: What is the sentencing range there that they list, the term of imprisonment that — well, you know, his guideline range? What is it, the months, if you can tell.

The Court: Well, are you talking about the one that's in the PSR or the one that they're suggesting that, if I granted the objection, would be in the PSR?

Mr. Pechacek: I'll be honest with you. I just walked over there. The second addendum I saw this morning and I didn't even get a chance to look at the — compare it to what I have, but I see what you're saying, Judge.

The Court: They tell me what I could do.

Mr. Pechacek: No. It says what you said. I read it hastily, I have to admit. It says what you said.

The Court: I mean, I don't find the ICE form to be not reliable, and I'm allowed to look at anything that's reliable. So, I am going to overrule the objection.

Mr. Pechacek: Right. Let me say I read it just a few minutes ago and I looked at it and I looked at it in court, and I have to admit that I misread it. I skimmed it, is what I did.

The Court: All right.

Mr. Gonzales: Judge, if I may address that.

The Court: Sure.

Mr. Gonzales: I know that the report states that, and there is some information in here, especially from the agent. I have the Defendant's wife in the courtroom. During the time that he's been absent from the country, which has been until he was back into it, I believe, in 2006—

11

> The Defendant: '06.
>
> Mr. Gonzales: — they did meet, but they would meet on the other side of the border. So, she had to make the trip all the way down there to meet him. As a result of one of those meetings, I think she became pregnant with another child and came back to the United States. The Defendant stayed in Mexico. From the information that the Defendant has given me, of course, he's always been in the Mexico area, has not come back, and I will address that in a little while when I give my statement regarding the position that the Court should take on the sentence.
>
> And I know that it's difficult. I know what it's difficult to say that an agent is going to lie or put some false information to the report, but it's there and there's really nothing much more we can do.
>
> The Court: I just don't understand why an ICE agent would lie on a report like that. I just don't understand that. I think it's completely reliable, that he would write down what the Defendant told him. So, I am going to overrule your objection.
>
> I am going to adopt the presentence report as my own, both the findings of facts and the application of the Guidelines to the facts, find a total offense level of 21, criminal history of IV, which given a guideline provision range of 57 to 71 months. (Transcript of Sentencing Hearing, Document No.52, pp. 3-6).

Marin-Arreola was sentenced to a term of imprisonment of 57 months, to be followed by a term of supervised release of 3 years. Also, the Court imposed a special assessment of $100. (Document No.39, Transcript of Sentencing Hearing, Document No. 52, pp. 13-14). With the respect to Marin-Arreola's sentence, Judge Harmon stated:

> The Defendant, Carlos Marin-Arreola, is before the Court for sentencing following a plea of guilty to illegal reentry of a previously deported alien following a conviction for an aggravated felony. The Defendant is a 46-year old man who was deported in 2001 after his federal conviction for importation of 50 kilograms or more of marijuana. He also has convictions for possession of cocaine in Houston and for a couple of petty offenses in New Orleans. The Defendant admitted to immigration authorities that he illegally reentered the United States in 2002 after his deportation. The Defendant has only three years of education in Mexico, but he has obtained skills in construction labor and carpentry as a result of on-the-job training. He's been employed in the aforementioned industries for several years in both the United States and in Mexico. In mitigation, he has accepted responsibility for committing the instant offense and appears to be remorseful for his criminal actions.

> Considering the totality of factors, a sentence at the low end of the advisory guideline imprisonment range will be sufficient to satisfy sentencing objectives under the Guidelines and the factors needed to promote respect for the law and deterrence as contemplated by 18, United States Code, Section 3553(a). The Court has considered the Guidelines and finds that a sentence within those guidelines is consistent with and takes into account the purposes of 18, United States Code, Section 3553(a). (Transcript of Sentencing Hearing, Document No. 52, pp. 11-12).

Judgment was entered on December 4, 2008. (Document No. 41). On May 20, 2009, within one year of his conviction being final, Marin-Arreola timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 44). In his § 2255 motion, Marin-Arreola raises claims of ineffective assistance of counsel. According to Marin-Arreola, his counsel rendered ineffective assistance when he failed to file a notice of appeal despite being told to do so by Marin-Arreola. In addition, Marin-Arreola alleges that his counsel rendered ineffective assistance of counsel when he failed to object to the length of his sentence and failed to challenge the enhancement to his sentence. Marin-Arreola further alleges that his sentence is greater than necessary to comply with the purposes of 18 U.S.C. § 3553(2). He also claims that his sentence was improperly enhanced by 16 levels based on his federal felony drug importation conviction. In support of this claim, Marin-Arreola cites to *United States v. Almazan-Becerra*, 482 F.3d 1085, 1088 (9th Cir. 2007), wherein the Ninth Circuit Court of Appeals opined:

> We have previously held that sections 11360(a) and 11379(a) of the California Health & Safety Code are overbroad and do not categorically qualify for drug trafficking enhancements. *See Navidad-Marcos*, 367 F.3d at 907-08 (Cal. Health & Safety Code § 11379(a) overbroad); *Rivera-Sanchez*, 247 F.3d at 908-09 (Cal. Health & Safety Code § 11360(a) overbroad).

Marin-Arreola has filed a supplement to his § 2255 motion (Document No. 56), wherein he amplifies his earlier claim that he entered the United States in 2006, and was not in the United States in 2002, which would have affected the computation of his sentence because his sentence would not have been

13

enhanced sixteen levels. According to Marin-Arreola, the Government was aware that he was not present in the United States until 2006.[6]

The Government, in its Response (Document No.54) suggests that an evidentiary hearing be held with respect to Marin-Arreola's contention that counsel failed to file a direct appeal so that the Court will be in a position to make a credibility determination on this issue. The Government has submitted the affidavit of Gerardo Harry Gonzales, Marin-Arreola's attorney, in which counsel responds to Marin-Arreola's allegation that he failed to file a direct appeal after being told to do so by Marin-Arreola. The affidavit states in pertinent part:

> I represented Carlos Marin-Arreola at this sentencing on November 21, 2008 in case number 4:08CR00242-001.
>
> The defendant never requested that I file a notice of appeal after sentencing. We did discuss his case thoroughly prior to sentencing and this subject was never brought up when we were preparing for the hearing. After the hearing he said he was satisfied with the results.

Marin-Arreola was provided a copy of counsel's affidavit, which was attached to the Government's Answer. The docket sheet shows that Marin-Arreola supplemented his § 2255 motion but did not

---

[6] Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, and the law is clear that Rule 15 applies to amendments of § 2255 motions. *See United States v. Saenz*, 282 F.3d 354. 356 (5th Cir. 2002) ("Every circuit that has addressed this issue agrees the [AEDPA's] one year statute of limitations does not render Rule 15 inapplicable to federal habeas proceedings."). "Under Fed.R.Civ.P. 15(c), a district court may in its discretion, permit an amendment which clarifies or amplifies a claim or theory in a timely filed § 2255 petition after AEDPA's one year statute of limitations has expired." *United States v. Thomas*, 221 F.3d 430, 433-434 (3rd Cir. 2000). Conversely, an amendment under Rule 15(c) should not be allowed where the movant seeks to add an entirely new claim or new theory of relief. *Id.* "An amended habeas petition does not relate back (and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644 (2005). Here, because Marin-Arreola's motion to amend his § 2255 is timely filed and because his theory of relief is supported by facts in his original motion and relates back to the earlier motion, he should be allowed to amend his § 2255 motion.

respond directly to the Government's Answer or to the contents of the affidavit. (Document No. 56).

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

As to Marin-Arreola's claim that he told counsel that he wanted to file an appeal and that counsel did not file said appeal, the law is clear that "[t]he failure to file a requested notice of appeal is ineffective assistance of counsel even without a showing that the appeal would have merit." *United States v. Alvarez*, (No. 04-40350), 172 Fed. App'x. 587, 589 (5th cir. 2006) (citing to *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The defendant need not show that an appeal would have been successful or even state the grounds on which he would have appealed. To establish prejudice, a defendant such as Marin-Arreola must demonstrate only that there is a reasonable probability that but for counsel's failure to consult with him about an appeal, he would have appealed. *Flores-Ortega*, 528 U.S. at 486. This standard applies even in cases where a defendant has waived the right to

16

appeal his conviction and sentence. *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The Fifth Circuit in *Tapp* held that an evidentiary hearing was required where the defendant's § 2255 motion alleged that counsel failed to appeal despite a request from the defendant to do so. *Tapp*, 491 F.3d 263.

Here, the docket sheet shows that a Notice of Appeal was not filed, either *pro se* by Marin-Arreola or by counsel. In addition, the docket sheet shows that counsel did not file a Motion to Withdraw or an *Anders* brief.[7] Based on this record, which consists of Marin-Arreola's sworn § 2255 motion and the affidavit of counsel, which contradicts his allegations, and because the United States has requested an evidentiary hearing, the undersigned Magistrate Judge recommends that an evidentiary hearing be held to assess the credibility of the parties on this issue, namely, whether Marin-Arreola can demonstrate by a preponderance of the evidence that he actually instructed counsel to file an appeal, *Tapp,* 491 F.3d at 266 and, if not, whether he consulted with counsel about an appeal. The Supreme Court in *Flores-Ortega* wrote:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal...If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal...If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

---

[7] Under the holding of *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court outlined the steps counsel should take when seeking to withdraw from representing a criminal defendant on appeal. According to *Anders*, counsel must conduct a "conscientious examination of the case before seeking permission to withdraw from a case. That request must be accompanied by a brief to the appellate court referring to anything in the record that might support the appeal." *Id.* Then, the appeals court reviews the record to determine whether the case is "wholly frivolous." *Id.*

*See Flores-Ortega*, 528 U.S. at 478. "Consult" in this context means that counsel advised the defendant about the advantages and disadvantages of an appeal and made a reasonable effort to discover the defendant's wishes. *Id*. That said, failure of counsel to consult his client about appellate rights does not, in and of itself, establish ineffective assistance of counsel. According to the Supreme Court, the following test applies to determine whether counsel has a constitutionally imposed duty to consult with a defendant about a potential appeal: whether there is a reason for counsel to think either (1) "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)" or (2) "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. In making this determination the court looks at the totality of the circumstances regarding the information counsel knew or should have known. *Id*. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*. In addition, even if counsel violates the duty to consult about an appeal, a defendant must still demonstrate prejudice, i.e, "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id*. at 486. Until this issue is resolved, no further recommendations can be made concerning the merits of Marin-Arreola's other claims.

**V. Conclusion and Recommendation**

Based on the foregoing, it is

RECOMMENDED that an evidentiary hearing be held on the issue of whether Movant was denied effective assistance of counsel due to his counsel's alleged failure to file a direct appeal. It is

further RECOMMENDED that Movant be appointed counsel to represent him at the hearing. *See* Rules Governing Section 2255 Proceedings 8(c). Counsel should be appointed by separate order.

The Magistrate Judge further RECOMMENDS that should Movant prevail on his ineffective assistance of claim, namely that counsel failed to file an appeal, that he be given an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001) (where movant was denied ineffective assistance of appellate counsel, judicial remedy is to grant out-of-time appeal), and that the Clerk should be directed to reinstate Movant's criminal judgment. *See West*, 240 F.3d at 459 ("when leave to file an out-of-time appeal is granted, the district court should *reinstate* the criminal judgment to trigger the running of a new Rule 4(b) appeal period.") (emphasis in original). In addition, should the Court determine that Movant is entitled to an out-of-time appeal, Movant's § 2255 Motion should be DISMISSED WITHOUT PREJUDICE. *See West*, 240 F.3d at 460 (clarifying that "part of the procedure for granting an out-of-time direct criminal appeal is dismissing the § 2255 motion without prejudice"); *United States v. Joubert*, 273 F.3d 1099 (5th Cir. 2001) (vacating the district court's grant of § 2255 relief and remanding with instructions for district court to dismiss the § 2255 motion without prejudice and to reenter its sentencing judgement so that the defendant could pursue an out-of-time appeal). In the alternative, should the Court conclude that Movant is not entitled to an out-of-time appeal, the matter should be referred back to the undersigned Magistrate Judge for a Memorandum and Recommendation.

It is further ORDERED that Movant's Motion to Supplement § 2255 (Document No. 56) is GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections

19

pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 2nd day of October, 2009.

_____
Frances H. Stacy
United States Magistrate Judge